PER CURIAM.
Ray Lamar Johnston appeals an order of the trial court denying his motion to vacate his conviction for first-degree murder and sentence of death filed under Florida Rule of Criminal Procedure 3.851. He also petitions this Court for a writ of habe-as corpus.[1] For the reasons that follow, we affirm the trial court’s order denying postconviction relief. We also deny the habeas petition.
J. FACTS AND PROCEDURAL HISTORY
Johnston was charged with the 1997 murder, kidnapping, robbery, and sexual battery of Leanne Coryell and with burglary of a conveyance with assault or battery. *735 Johnston v. State, 841 So.2d 349, 351 (Fla.2002). The jury found Johnston guilty on all charges and unanimously recommended the death penalty. The trial court followed the jury’s recommendation and sentenced Johnston to death. Id. at 355.
The evidence presented at Johnston’s trial demonstrated that Johnston had beaten, raped, and manually strangled Coryell, then dragged her to a pond and left her nude, floating face down. Id. at 352. When law enforcement arrived at the scene, Coryell’s car was in a nearby parking lot with the keys in the ignition and the engine still warm. Id. Later that night and early the next morning, ATM surveillance videos captured Johnston using Coryell’s ATM card to withdraw $1000 from her account. Id. Police obtained a warrant to search Johnston’s apartment, where they found a pair of wet tennis shoes matching three partial impressions found at the scene. Id.
After Johnston saw his picture on television, he voluntarily told police he was friends with Coryell and had gone out for dinner and drinks on the night of the murder. Id. At that time, he explained that he had loaned money to Coryell and that she had provided the ATM card so that Johnston could withdraw money from her account as repayment. Id. After making this initial statement, Johnston was arrested for grand theft. Id. He received Miranda[2] warnings and agreed to continue the interview. Id. Thereafter, the detectives pointed out factual discrepancies in Johnston’s initial statement and confronted Johnston with the information that they had discovered his wet tennis shoes. Id. at 352-53. Johnston continued to deny his guilt and responded that law enforcement would not find any DNA evidence, hair, or saliva that would link him to the victim. Id. at 353.
At trial, the prosecution presented evidence that Coryell had clocked out of work over two hours after Johnston had purported to meet her for drinks. Id. at 351-52. His roommate testified that they lived in the same apartment complex as Coryell, that Johnston left the apartment that night without taking his car, and that Johnston returned later that night with money to repay a loan. Id. at 351. Johnston’s fingerprint was found on the outside of Coryell’s car. Id. at 352.
In imposing the death sentence, the trial court found four aggravators,[3] one statutory mitigator,[4] and numerous nonstatutory mitigators.[5]
*736 This Court affirmed Johnston’s conviction and sentence on direct appeal. Id. at 361. Johnston subsequently filed a motion for postconviction relief. The trial court denied Johnston’s postconviction motion after holding an evidentiary hearing on some of his claims. Johnston now appeals the denial of postconviction relief and has filed a habeas petition in this Court.

II. JOHNSTON’S POSTCONVICTION CLAIMS

On appeal from the denial of postconviction relief, Johnston raises ten issues: (A) counsel was ineffective for failing to adequately question juror Tracy Robinson concerning her prior misdemeanor and active capias; (B) counsel was ineffective for failing to include juror Robinson’s resulting nondisclosure in a motion for new trial; (C) the postconviction court erred in denying Johnston’s motion to interview juror Robinson; (D) counsel was ineffective for failing to file a motion to suppress Johnston’s statements to law enforcement; (E) counsel was ineffective for failing to call Diane Busch as a witness; (F) counsel was ineffective for failing to inform the trial court or jury that Johnston was using prescribed psychotropic medication at the time of trial; (G) counsel was ineffective for offering ill-considered and improper advice concerning Johnston’s need to testify; (H) counsel was ineffective for failing to present potential mitigators; (I) counsel was ineffective for failing to adequately challenge fingerprint evidence; (J) counsel was ineffective for failing to adequately challenge shoe tread evidence; (K) counsel was ineffective for failing to further question members of the venire concerning their exposure to pretrial publicity; (L) counsel was ineffective for failing to file a legally sufficient motion to disqualify the trial judge; and (M) cumulative error warrants relief.[6] As explained below, we affirm the trial court’s denial of relief.

A. Failure to sufficiently question juror Robinson at voir dire

Johnston first claims that counsel was ineffective for failing to sufficiently question juror Tracy Robinson at voir dire, suggesting that a targeted “follow-up” question would have brought out additional facts not disclosed by Robinson. He also asserts that such information would have caused defense counsel to move to strike Robinson for cause or to peremptorily exclude Robinson. We disagree.
Juror Robinson, who served as the jury foreperson, was arrested for a drug-related offense during the penalty phase. Johnston, 841 So.2d at 355.[7] Her arrest revealed that she pled nolo contendere approximately ten months before Johnston’s trial to misdemeanor charges of obstructing a police officer without violence. Id. During voir dire, juror Robinson did not reveal her prior plea and charges. Id. Robinson also failed to pay her court costs in that obstruction case; therefore, at the time of Johnston’s trial she was the subject of an active capias for civil contempt charges. Id. at 357. On direct appeal, *737 Johnston argued that he was entitled to a new trial because of Robinson’s nondisclosure and active capias. Id. at 355-57. This Court rejected Johnston’s argument, holding that the capias did not statutorily disqualify Robinson and that Johnston had failed to raise the issue of Robinson’s nondisclosure with the trial court. Id. at 357-58.
Following the United State Supreme Court’s decision in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), this Court has held that for ineffective assistance of counsel claims to be successful, the defendant must demonstrate both deficiency and prejudice:
First, the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. Second, the clear, substantial deficiency shown must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined.
Bolin v. State, 41 So.3d 151, 155 (Fla.2010) (quoting Maxwell v. Wainwright, 490 So.2d 927, 932 (Fla.1986)).
There is a strong presumption that trial counsel’s performance was not deficient. See Strickland, 466 U.S. at 690, 104 S.Ct. 2052. “A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time.” Id. at 689,104 S.Ct. 2052. The defendant carries the burden to “overcome the presumption that, under the circumstances, the challenged action ‘might be considered sound trial strategy.’” Id. (quoting Michel v. Louisiana, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)). “Judicial scrutiny of counsel’s performance must be highly deferential.” Id. “[Strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel’s decision was reasonable under the norms of professional conduct.” Occhicone v. State, 768 So.2d 1037, 1048 (Fla.2000). Furthermore, where this Court previously has rejected a substantive claim on the merits, counsel cannot be deemed ineffective for failing to make a meritless argument. Melendez v. State, 612 So.2d 1366, 1369 (Fla.1992).
In demonstrating prejudice, the defendant must show a reasonable probability that “but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Strickland, 466 U.S. at 694, 104 S.Ct. 2052.
Because both prongs of the Strickland test present mixed questions of law and fact, this Court employs a mixed standard of review, deferring to the circuit court’s factual findings that are supported by competent, substantial evidence, but reviewing the circuit court’s legal conclusions de novo. See Sochor v. State, 883 So.2d 766, 771-72 (Fla.2004).
First, in this case, counsel was not ineffective for failing to sufficiently question juror Robinson regarding the capias. See Ferrell v. State, 29 So.3d 959, 976 (Fla.2010) (“Trial counsel cannot be deemed ineffective for failing to raise a meritless argument.”). As this Court held on direct appeal, Robinson’s civil contempt charge did not disqualify her from service under section 40.013(1), Florida Statutes (1999). Johnston, 841 So.2d at 356-57. Therefore, even if Robinson was aware of the capias and disclosed it upon questioning, such disclosure would not have provid *738 ed a reason for Robinson to be removed for cause.
Second, counsel was not deficient because in keeping juror Robinson, defense counsel was following its strategy of seeking a young and minority jury. After conducting a mock trial and soliciting pretrial advice from a professional jury consultant, defense counsel decided to pursue a strategy of seating jurors matching the profile shared by juror Robinson. Defense counsel testified at the evidentiary hearing that Robinson’s prior misdemeanor and active capias would not have made her any less desirable to the defense. Counsel was not ineffective for pursuing this reasonable strategy. See Dillbeck v. State, 964 So.2d 95, 103 (Fla.2007) (“Dillbeck’s trial counsel adopted a reasonable trial strategy of avoiding a death sentence by attempting to seat jurors likely to recommend a life sentence.”).
Additionally, Johnston has failed to establish prejudice; given that defense counsel would not have moved to strike juror Robinson even if counsel had further questioned Robinson and she had disclosed her criminal history, our confidence in the outcome is not undermined. In fact, after learning of juror Robinson’s arrest, the defense verbally objected to her removal, expressing a preference for juror Robinson over the alternate juror.
Accordingly, because Johnston cannot demonstrate deficiency and prejudice, this ineffectiveness claim is without merit.

B. Failure to cite juror Robinson’s misconduct in motion for new trial

Johnston next claims that defense counsel was ineffective for failing to include in the motion for new trial a claim of juror misconduct based on juror Robinson’s nondisclosure. Because Johnston cannot demonstrate prejudice, we disagree.
This Court has explained that
[i]n determining whether a juror’s nondisclosure of information during voir dire warrants a new trial, courts have generally utilized a three-part test. First, the complaining party must establish that the information is relevant and material to jury service in the case. Second, that the juror concealed the information during questioning. Lastly, that the failure to disclose the information was not attributable to the complaining party’s lack of diligence.
De La Rosa v. Zequeira, 659 So.2d 239, 241 (Fla.1995) (citations omitted); see also Lugo v. State, 2 So.3d 1, 13 (2008).
Under the first prong of De La Rosa, Johnston must establish that the nondisclosed information is relevant and material to jury service in this case. De La Rosa, 659 So.2d at 241; see also Murray v. State, 3 So.3d 1108, 1121-22 (Fla. 2009). “There is no per se rule that involvement in any particular prior legal matter is or is not material.” Roberts v. Tejada, 814 So.2d 334, 345 (Fla.2002); see also State Farm Fire & Cas. Co. v. Levine, 837 So.2d 363, 366 n. 2 (Fla.2002). Factors that may be considered in evaluating materiality include the remoteness in time of a juror’s prior exposure, the character and extensiveness of the experience, and the juror’s posture in the litigation. Roberts, 814 So.2d at 342.
But “materiality is only shown ‘where the omission of the information prevented counsel from making an informed judgment—which would in all likelihood have resulted in a peremptory challenge.’ ” Levine, 837 So.2d at 365 (internal quotation marks omitted) (quoting Roberts, 814 So.2d at 340). In other words, “[a] juror’s nondisclosure ... is considered material if *739 it is so substantial that, if the facts were known, the defense likely would peremptorily exclude the juror from the jury.” Murray, 3 So.3d at 1121-22 (quoting McCauslin v. O’Conner, 985 So.2d 558, 561 (Fla. 5th DCA 2008)).
In Lugo, we held that a juror’s nondisclosure was not sufficiently material where the juror, sitting on a death penalty case, had been a victim of theft. Lugo, 2 So.3d at 14. In evaluating materiality, this Court observed that the juror’s “one-time isolated incident” did not resemble the murder victim’s “extended torture and captivity.” Id. Thus, we concluded that the sheer disparity between the experiences made the juror’s experience insufficiently material or relevant to service on that jury. Id.
Similarly, here, Johnston has failed to satisfy materiality under De La Rosa’s first prong. We find nothing about the character and extensiveness of Robinson’s own experience — she committed a nonviolent offense and then pled nolo contende-re — that suggests she would be biased against a defendant pleading not guilty in a death penalty case or against legal proceedings in general. See Lugo, 2 So.3d at 14; cf. De La Rosa, 659 So.2d at 241. The capias, furthermore, was not issued for a criminal offense. Johnston, 841 So.2d at 357. In fact, juror Robinson’s positioning as a prior defendant makes bias against Johnston especially unlikely. See Garnett v. McClellan, 767 So.2d 1229, 1231 (Fla. 5th DCA 2000) (finding that prior litigation experience was immaterial, in part, because the juror had been similarly situated to and was therefore more likely to be sympathetic to the complaining party).
Neither was there any evidence to suggest that here, “if the facts were known, the defense likely would [have] peremptorily exclude[d] the juror from the jury.” Murray, 3 So.3d at 1121-22 (quoting McCauslin, 985 So.2d at 561). In fact, as explained above, Robinson matched the profile of the optimal juror sought by the defense. Defense counsel also testified at the evidentiary hearing that in his experience, the substance of Robinson’s nondisclosure would have caused the prosecution — not the defense — to exclude or strike a juror.
Accordingly, because Johnston could not have demonstrated materiality, any motion for new trial based on Robinson’s disclosure would not have been successful. And because the claim lacked merit, counsel cannot be deemed ineffective for failing to raise it. Therefore, denial of this ineffectiveness claim is affirmed.

C. The postconviction court’s denial of motion for juror interview

Johnston claims that the postconviction trial court should have permitted him to conduct an interview of juror Robinson under Florida Rule of Criminal Procedure 3.575. Johnston told the postconviction court that he sought to question juror Robinson on her motives or intent during voir dire.[8] We affirm the trial courts denial.
“A trial court’s decision on a motion to interview jurors is reviewed pursuant to an abuse of discretion standard.” Anderson v. State, 18 So.3d 501, 519 (Fla.2009). The trial court does not abuse its discretion in denying motions to interview *740 jurors based on juror bias or misconduct where there is no indication of bias or misconduct in the record. See id.
Here, the trial court did not abuse its discretion in denying Johnston’s rule 3.575 motion because a juror interview was unnecessary given that the substance of Robinson’s nondisclosure was already known.

D. Johnston’s statement to law enforcement

Johnston argues that trial counsel was ineffective under Strickland for failing to move to suppress his statement made to law enforcement prior to issuance of a Miranda warning. Johnston also asserts that counsel should have moved to suppress the statement made after Johnston received a Miranda warning because the warning came in the middle of continual interrogation. We affirm denial of both arguments.
Upon seeing his picture on television, Johnston phoned police, drove himself to the police station, and made a statement to detectives he knew to be assigned to the case. He believed his statements would account for his whereabouts on the night of the murder and his use of the victim’s ATM card. At the postconviction eviden-tiary hearing, defense counsel explained that he wanted the jury to hear Johnston’s statements because they provided the only lawful explanation as to why Johnston possessed the victim’s ATM card.
Defense counsel’s explanation demonstrates that his decision not to move to suppress Johnston’s statements was a reasonable, strategic choice. See Occhicone, 768 So.2d at 1048; Laurrence v. State, 969 So.2d 294, 309 (Fla.2007). Short of calling Johnston to testify, there was no available evidence aside from the statement that could explain Johnston’s use of the ATM card.
Additionally, counsel cannot be deemed ineffective because any motion to suppress would have been meritless. See Kormondy v. State, 983 So.2d 418, 430 (Fla.2007); Fitzpatrick v. State, 900 So.2d 495, 511 (Fla.2005). Evidence presented at the postconviction evidentiary hearing demonstrated that Johnston’s initial statement was voluntary. Therefore, no Miranda warnings were required until Johnston was formally arrested. See Traylor v. State, 596 So.2d 957, 965-66 (Fla.1992). And, since Johnston was not in custody when he gave his initial statement, it follows that Johnston’s post-Miranda statement was obtained following a valid waiver. See Ault v. State, 866 So.2d 674, 682 (Fla.2003) (“[I]t is custodial interrogation that triggers the Miranda prophylactic.”). Therefore, a motion to suppress either statement would have been denied.
Because defense counsel made a reasonable strategic choice and because a motion to suppress would have lacked merit, Johnston cannot demonstrate the deficiency prong of Strickland. Therefore, we affirm the trial court’s denial of this ineffectiveness claim.

E. Failure to call Diane Busch as a witness

Johnston claims that counsel was ineffective for failing to investigate and call Diane Busch as a witness. We disagree.
Johnston proffered the testimony of his friend, Diane Busch, at the postconviction evidentiary hearing. She testified that in the months prior to the murder, Johnston paid for several social outings and did not appear to be in need of money. She also testified that when she was hospitalized for an illness, Johnston saved her life by being concerned for her and listening to her. However, Busch also testified that while she was still in recovery at the hospital, she saw something on television indicating *741 law enforcement was looking for Johnston and reported him to the police. At the postconviction evidentiary hearing, her statement to the police was introduced to show that she found Johnston to be “possessive and obsessed” and verbally abusive to her family and hospital staff during her hospital stay. She told police that once she realized how Johnston was acting, she requested that he be kept from visiting her.
This Court has “consistently held that a trial counsel’s decision to not call certain witnesses to testify at trial can be reasonable trial strategy.” Everett v. State, 54 So.3d 464, 474 (Fla.2010); see also Hertz v. State, 941 So.2d 1031, 1039 (Fla.2006) (holding counsel not ineffective for failing to call a witness at the penalty phase when counsel decided that he “was not a good witness and not that helpful” during the guilt phase). “[I]t is reasonable for trial counsel to forego evidence that, if presented in mitigation, could damage a defendant’s chances with the jury.” Nelson v. State, 43 So.3d 20, 32 (Fla.2010); see also Reed v. State, 875 So.2d 415, 437 (Fla.2004) (“An ineffective assistance claim does not arise from the failure to present mitigation evidence where that evidence presents a double-edged sword.”).
The decision to not use Johnston’s friend as a witness at trial was clearly within “the wide range of professionally competent assistance.” Strickland, 466 U.S. at 690, 104 S.Ct. 2052. Given the slight value of her proffered testimony and the likelihood that it would have opened the door to the prosecution’s highly damaging cross-examination and impeachment evidence also presented to the postconviction court, trial counsel’s decision was reasonable. See Gaskin v. State, 822 So.2d 1243, 1248 (Fla.2002) (“Trial counsel will not be held to be deficient when she makes a reasonable strategic decision to not present mental mitigation testimony during the penalty phase because it could open the door to other damaging testimony.”).
Accordingly, we affirm denial of this claim.

F. Johnston’s use of prescribed psychotropic medication at trial

Johnston claims that counsel was ineffective because counsel failed to inform the jury that Johnston was taking prescribed psychotropic medications at the time of trial. Johnston alleges that the medications rendered him incompetent and that when he testified at the penalty phase, the medications made him appear cold and callous. However, this ineffectiveness claim is without merit because Johnston has failed to demonstrate prejudice.
“In order to demonstrate prejudice from counsel’s failure to investigate his competency, a petitioner has to show that there exists ‘at least a reasonable probability that a psychological evaluation would have revealed that he was incompetent to stand trial.’ ” Futch v. Dugger, 874 F.2d 1483, 1487 (11th Cir.1989) (quoting Alexander v. Dugger, 841 F.2d 371, 375 (11th Cir.1988)), quoted in, Nelson v. State, 43 So.3d 20, 29 (Fla.2010).
A defense expert evaluated Johnston’s general competency several times throughout the trial and testified at the postconviction evidentiary hearing that he never saw any reason to question Johnston’s competence. Johnston’s defense counsel also testified that Johnston never appeared blunted or confused at any stage of the proceedings. With respect to Johnston’s testimony at the penalty phase, both the expert and defense counsel testified that Johnston appeared emotional and not cold or callous at the time he delivered his testimony.
*742 Johnston has failed to demonstrate prejudice because there was no reasonable probability that an evaluation would have produced a finding of incompetence. In fact, the postconviction court determined that Johnston was not incompetent, confused, or blunted. This finding was supported by competent, substantial evidence in the form of testimony from an evaluating defense expert and from counsel. See Reed, 875 So.2d at 421-22; Zakrzewski v. State, 866 So.2d 688, 696 (Fla.2003) (where defendant’s and counsel’s testimony conflicted, upholding the trial court finding that counsel was credible).
Regarding the failure to request an instruction prior to Johnston’s penalty-phase testimony, because Johnston was not incompetent and did not appear cold or callous, the lack of instruction in this case does not undermine our confidence in the outcome. Thus, Johnston cannot demonstrate prejudice.
Accordingly, we affirm denial of this claim.

G. Johnston’s decision to testify at the penalty phase

We also affirm the denial of Johnston’s claims that defense counsel provided him with ill-considered and improper advice about the need to testify at the penalty phase. The trial court found after an evi-dentiary hearing that defense counsel in fact discouraged Johnston from testifying. The trial court’s finding was based on the competent substantial evidence provided by defense counsel’s evidentiary hearing testimony. See Roberts v. State, 840 So.2d 962, 973 (Fla.2002) (“Findings on the credibility of evidence by a lower court are not overturned if supported by competent, substantial evidence.”). The voluntariness of Johnston’s decision is underscored by the penalty-phase colloquy in which Johnston represented that he understood it was his decision whether to testify and that he wanted to testify. See Gonzalez v. State, 990 So.2d 1017, 1031-32 (Fla.2008). Accordingly, this claim does not warrant relief.

H. Potential mitigators

Next, Johnston claims that his trial counsel should have presented additional evidence of psychological issues that could have served as nonstatutory mitigation. Johnston also claims that trial counsel’s general theory of mitigation was incoherent. Because Johnston has failed to show a constitutional deficiency of counsel, we affirm the trial court’s denial of this claim.
Johnston’s expert, who testified during the postconviction evidentiary hearing, suggested that there should have been additional evidence of neurological and brain functioning impairment, the nexus between the impairment and Johnston’s criminal conduct, aggressive reactivity, reactive im-pulsivity and poor judgment, affective and anxiety disorders, familial dysfunctional factors, and attention deficit hyperactivity disorder (ADHD). However, other testimony from the postconviction evidentiary hearing revealed that prior to trial, defense counsel enlisted a mitigation specialist and reviewed Johnston’s medical, criminal, hospital, education, and employment records. The mitigation specialist contacted and interviewed Johnston and his family members, consulted with medical experts who eventually testified on behalf of Johnston, scheduled a PET scan, and communicated all information, including PET scan results, to defense counsel and an evaluating psychologist. Defense counsel secured a mental health evaluation, consulted with the evaluator and other medical experts, and at the penalty phase, elicited from four medical experts testimony that Johnston had frontal lobe brain dam *743 age and mental health problems. Johnston, 841 So.2d at 354-55.
As this Court explained in Pagan v. State, 29 So.3d 938 (Fla.2009),
“Strickland does not require counsel to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing. Nor does Strickland require defense counsel to present mitigating evidence at sentencing in every ease.” Rather, in deciding whether trial counsel exercised reasonable professional judgment with regard to the investigation and presentation of mitigation evidence, a reviewing court must focus on whether the investigation resulting in counsel’s decision not to introduce certain mitigation evidence was itself reasonable. When making this assessment, “a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further.”
Id. at 949 (citations omitted) (quoting Wiggins v. Smith, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)).
Here, the evidence presented to the postconviction court demonstrated that defense counsel did not fail to reasonably investigate mitigation. See Stewart v. State, 37 So.3d 243, 258 (Fla.2010) (holding that the defendant did not show deficiency or prejudice where “the mental health experts and lay witnesses who testified during the penalty phase conveyed the substance, though perhaps not all of the details, of the proposed mitigating circumstances to the penalty phase jury”). Substantial evidence of Johnston’s mental health was considered and presented by counsel at the penalty phase. In fact, the substance of almost all the information now presented by Johnston was presented to the jury. Therefore, counsel was not deficient in failing to present additional mitigation evidence. See Pagan, 29 So.3d at 950; Darling v. State, 966 So.2d 366, 378 (Fla.2007) (holding that trial counsel was not ineffective for failing to present cumulative and redundant psychiatric mitigation). And, to the extent that Johnston disagrees with the defense’s mental health expert and his decision not to diagnose Johnston with ADHD or any other condition, counsel was not deficient for relying on the prior psychiatric evaluation. See Darling, 966 So.2d at 377 (“[D]efense counsel is entitled to rely on the evaluations conducted by qualified mental health experts, even if, in retrospect, those evaluations may not have been as complete as others may desire.”).
Accordingly, this claim does not warrant relief.

I. Fingerprint evidence

Johnston claims that counsel was ineffective for failing to consult and present an expert who could testify as to the lack of reliability regarding latent fingerprint analysis. However, the expert presented by Johnston had no formal training in latent fingerprint analysis and did not examine the latent fingerprints in this case. Therefore, it is highly unlikely that this testimony would have been admissible.
Regardless of the admissibility of such testimony, defense counsel’s failure to present it does not undermine confidence in the outcome. Because the expert was neither qualified nor prepared to offer testimony on whether the latent fingerprint found on the victim’s car indeed matched Johnston’s fingerprint, the expert could not have called into question the State’s positive identification of Johnston. See Morris v. State, 931 So.2d 821, 830 (Fla.2006) (“[T]he failure to call witnesses can constitute ineffective assistance of counsel *744 if the witnesses may have been able to cast doubt on the defendant’s guilt....” (quoting Ford v. State, 825 So.2d 358, 360-61 (Fla.2002))).
Accordingly, this ineffectiveness of counsel claim does not warrant relief.

J. Shoe tread evidence

Johnston claims that defense counsel was ineffective for failing to secure the most defense-friendly statistic on the number of shoes that could have matched the impressions found at the crime scene. However, counsel cannot be deemed deficient for failing to present evidence that does not exist. See, e.g., Clark v. State, 35 So.3d 880, 888 (Fla.2010) (“At the eviden-tiary hearing, Clark presented no evidence to support this claim. Trial counsel cannot be ineffective for failing to present evidence that did not exist at the time of trial.”). Johnston himself failed to obtain any evidence from the shoe manufacturer or from any other source to establish that the number of matching shoes was “millions,” as he claims, or that the affidavit presented at trial was otherwise incorrect. Therefore, we affirm denial of this claim.

K. Pretrial publicity

Johnston claims that trial counsel was ineffective for failing to sufficiently question members of the venire regarding their exposure to pretrial publicity. Because Johnston has not shown that the jurors were actually biased, our confidence in the outcome is not undermined. See Carratelli v. State, 961 So.2d 312, 324 (Fla.2007).
During voir dire, two eventual jurors indicated that they had heard about the case on the news. Trial counsel asked one of those jurors directly whether, given exposure to media reports, he could be fair and impartial. That juror responded that he could. While counsel did not directly question the other juror, the second juror gave no indication as to what he had heard on the news or whether he was at all influenced by the news report, even after defense counsel invited jurors to respond to his repeated explanation of the requirement that jurors must be fair and impartial.
In Carratelli we explained:
[W]here a postconviction motion alleges that trial counsel was ineffective for failing to raise or preserve a cause challenge, the defendant must demonstrate that a juror was actually biased.
A juror is competent if he or she “can lay aside any bias or prejudice and render his verdict solely upon the evidence presented and the instructions on the law given to him by the court.” Therefore, actual bias means bias-in-fact that would prevent service as an impartial juror. Under the actual bias standard, the defendant must demonstrate that the juror in question was not impartial— i.e., that the juror was biased against the defendant, and the evidence of bias must be plain on the face of the record.
961 So.2d at 324 (citations omitted) (emphasis supplied) (quoting Lusk v. State, 446 So.2d 1038, 1041 (Fla.1984)). To be entitled to relief, the defendant must show that the juror “was actually biased, not merely that there was doubt about her impartiality.” Owen v. State, 986 So.2d 534, 550 (Fla.2008).
In CamtelU, we held that the defendant failed to demonstrate actual bias where the challenged juror represented during voir dire that he could be fair, listen to the evidence, and follow the law. See 961 So.2d at 327. And in Lugo, we found that the defendant could not demonstrate actual bias where, after the trial court’s specific discussion on improper bias, the juror simply did not indicate that his ability to *745 be impartial was affected by a prior experience. 2 So.3d at 16.
Johnston has failed to demonstrate actual bias. See id.; Owen, 986 So.2d at 550; Carratelli, 961 So.2d at 324. One juror, like the juror in Carratelli, indicated that he retained the ability to be impartial. The other juror, like the one in Lugo, simply declined to respond to specific discussion on bias during voir dire. There is no evidence that either juror was biased.
Because Johnston must show more than mere doubt about the juror’s impartiality and because there is no evidence of actual bias, we affirm denial of this claim. See Owen, 986 So.2d at 549-50.

L. Motion to disqualify

Johnston claims that counsel was ineffective for failing to file a legally sufficient motion to disqualify the trial judge. The record indicates that a motion to disqualify was filed and that the trial judge denied the motion. Nevertheless, Johnston asserts — without argument — that the postconviction trial court erred in summarily denying this claim because the claim required an evidentiary determination. However, Johnston waived this argument because he does not identify the alleged error, describe the factual determination he believes was necessary, or even set out the facts he believes are pertinent to the claim. See Cooper v. State, 856 So.2d 969, 977 n. 7 (Fla.2003) (“Cooper ... contend[s], without specific reference or supportive argument, that the ‘lower court erred in its summary denial of these claims.’ We find speculative, unsupported argument of this type to be improper, and deny relief based thereon.”); Duest v. Dugger, 555 So.2d 849, 852 (Fla.1990) (“The purpose of an appellate brief is to present arguments in support of the points on appeal. Merely making reference to arguments below without further elucidation does not suffice to preserve issues.”).

III. PETITION FOR WRIT OF HABEAS CORPUS

Johnston raises three claims in his petition for writ of habeas corpus: (A) the sentence constitutes cruel and unusual punishment; (B) appellate counsel was ineffective for failing to claim fundamental error on the issue of juror Robinson’s nondisclosure; and (C) admission of Johnston’s statements to law enforcement violated his right against self-incrimination.

A. Cruel and unusual punishment

Johnston argues that his execution would violate the Eighth and Fourteenth Amendments as interpreted by the United States Supreme Court in Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002) (holding the death penalty unconstitutional for mentally retarded defendants), and Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) (holding the death penalty unconstitutional for defendants under age eighteen at the time of the crime). Johnston claims that he is a “profoundly mentally ill individual” and that evolving standards of decency prohibit his execution. He makes no claim of mental retardation.
However, this Court has consistently rejected similar claims. See Nixon v. State, 2 So.3d 137, 146 (Fla.2009) (declining to extend Atkins to mentally ill). Accordingly, relief is denied as to this claim.

B. Juror Tracy Robinson

Next, Johnston claims that his appellate counsel was ineffective for failing to frame the issue of juror Tracy Robinson’s nondisclosure as one involving fundamental error. We disagree.
*746 Consistent with the Strickland standard, to grant habeas relief based on ineffectiveness of counsel, this Court must determine
first, whether the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency-falling measurably outside the range of professionally acceptable performance and, second, whether the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result.
Pope v. Wainwright, 496 So.2d 798, 800 (Fla.1986); see also Freeman v. State, 761 So.2d 1055, 1069 (Fla.2000); Thompson v. State, 759 So.2d 650, 660 (Fla.2000).
In raising such a claim, “[t]he defendant has the burden of alleging a specific, serious omission or overt act upon which the claim of ineffective assistance of counsel can be based.” Freeman, 761 So.2d at 1069 (citing Knight v. State, 394 So.2d 997, 1001 (Fla.1981)). Claims of ineffective assistance of appellate counsel may not be used to camouflage issues that should have been presented on direct appeal or in a postconviction motion. See Rutherford v. Moore, 774 So.2d 637, 643 (Fla.2000). “If a legal issue ‘would in all probability have been found to be without merit’ had counsel raised the issue on direct appeal, the failure of appellate counsel to raise the meritless issue will not render appellate counsel’s performance ineffective.” Id. (quoting Williamson v. Dugger, 651 So.2d 84, 86 (Fla.1994)).
We deny relief for two reasons. First, Johnston’s claim is procedurally barred. Johnston’s argument that he is entitled to a new trial based on juror Robinson’s alleged misconduct was raised in direct appeal to this Court, Johnston, 841 So.2d at 357, and as the first issue in his rule 3.851 motion. Johnston is not permitted to camouflage the underlying argument as an ineffective assistance of appellate counsel claim. See Schoenwetter v. State, 46 So.3d 535, 562 (Fla.2010) (“Because every argument raised in this portion of appellant’s habeas petition either could have been or in fact was raised in his motion filed pursuant to rule 3.851, this claim is rejected as procedurally barred.”); Blanco v. Wainwright, 507 So.2d 1377, 1384 (Fla.1987) (“By raising the issue in the petition for writ of habeas corpus, in addition to the rule 3.850 petition, collateral counsel has accomplished nothing except to unnecessarily burden this Court with redundant material.”).
Second, even if the claim were not procedurally barred, it is meritless. Contrary to Johnston’s assertion, appellate counsel did raise on direct appeal the unpreserved issue of entitlement to a new trial based on juror misconduct. See Johnston, 841 So.2d at 357 (“Johnston next asserts that he is entitled to a new trial because juror Robinson deliberately failed to disclose that she pled nolo contendere to a misdemeanor charge within the past year.”). Inherent in this Court’s treatment of the claim on direct appeal was the determination that Johnston’s claim was not fundamental error. See Carratelli, 961 So.2d at 325 (“If an appellate court refuses to consider unpreserved error, then by definition the error could not have been fundamental.”).
Accordingly, we deny relief.

C. Right against self-incrimination

Finally, Johnston claims that his statements to law enforcement were admitted at trial in violation of Miranda.[9] *747 He also asserts, without argument, that appellate counsel was ineffective for failing to raise the issue on direct appeal.
Johnston’s claim is procedurally barred because each argument could have been, or was raised in Johnston’s postconviction motion. See Teffeteller v. Dugger, 734 So.2d 1009, 1025 (Fla.1999). In fact, Johnston’s argument that his statement was obtained in violation of his Miranda rights in his postconviction motion has been addressed above. See Hildwin v. Dugger, 654 So.2d 107, 111 (Fla.1995) (“Habeas corpus is not to be used for additional appeals of issues that could have been, should have been, or were raised in a [postconviction] motion.”) (emphasis omitted).
Accordingly, we reject this claim.

IV. CONCLUSION

Based on the foregoing, we affirm the trial court’s order denying Johnston’s rale 3.851 motion, and we deny his habeas petition.
It is so ordered.
CANADY, C.J., and PARIENTE, LEWIS, QUINCE, POLSTON, LABARGA, and PERRY, JJ., concur.

. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. The trial court found the following aggrava-tors: (1) the defendant was previously convicted of violent felonies (great weight); (2) the crime was committed while Johnston was engaged in the commission of sexual battery and a kidnapping (great weight); (3) it was committed for pecuniary gain (great weight); and (4) it was especially heinous, atrocious, or cruel (great weight). Id. at 355 n. 3.

. The trial court found that Johnston’s capacity to appreciate the criminality of his conduct or to conform his conduct to the requirement of law was substantially impaired and gave it moderate weight. Id. at 355 n. 4.

.The trial court gave weight to the following nonstatutory mitigation: (1) the defendant has shown remorse (slight weight); (2) the defendant has a long history of mental illness (slight weight); (3) the defendant is capable of strong, loving relationships (slight weight); (4) the defendant excels in a prison environment (slight weight); (5) the defendant could contribute while in prison (slight weight); (6) the defendant served in the U.S. Air Force (slight weight); (7) during the time the defendant was on parole, he excelled (slight weight); (8) the defendant was a productive member of society after his release from prison (slight weight); (9) when notified that the police were looking for him, he turned himself in (slight weight); (10) the defendant demonstrated appropriate courtroom behav *736 ior during trial (slight weight); (11) "the defendant has tried to conform his behavior to normal time after time, but has been thwarted by his mental illness and brain dysfunction” (slight weight); (12) the defendant has the support of his mother and sister (slight weight); and (13) the defendant offered to be a kidney donor for his ex-wife (slight weight). Id. at 360 n. 13.

. Because Johnston has failed to provide this Court with any basis for relief in any of his postconviction claims, Johnston is not entitled to relief based on cumulative error. See Bradley v. State, 33 So.3d 664, 684 (Fla.2010).

. This Court's opinion on direct appeal fully set out the facts regarding juror Robinson. See id. at 355-56.

. To the extent that Johnston alleges entitlement to a juror interview on the same grounds advanced on direct appeal — the issue of Robinson’s active capias — the trial court correctly denied an interview because the subject claim was procedurally barred. See, e.g., Green v. State, 975 So.2d 1090, 1106 (Fla.2008) ("Because the ... issue was raised on direct appeal, Green is not permitted to relitigate it on postconviction appeal.”).

. To the extent that Johnston claims State v. Powell, 998 So.2d 531 (Fla.2008), re *747 versed, - U.S. --, 130 S.Ct. 1195, 175 L.Ed.2d 1009 (2010), dictates another result, his claim is meritless. As Johnston concedes, he was clearly advised of his Miranda rights.