266 So.2d 661 (1972)
The STATE of Florida, Petitioner,
v.
John MATERA and Gennaro Galtieri, Respondents.
No. 41925.
Supreme Court of Florida.
July 12, 1972.
Rehearing Denied October 9, 1972.
*662 Robert L. Shevin, Atty. Gen. and Arnold R. Ginsberg, Asst. Atty. Gen., for petitioner.
Milton E. Grusmark, Miami Beach, for respondents.
BOYD, Justice.
This cause is before us on petition for writ of certiorari to review the decision of the District Court of Appeal, Third District, reported at 254 So.2d 843, a decision certified as passing on a question of great public interest, to-wit:
"Whether the credibility of a witness may be attacked collaterally pursuant to Criminal Procedure Rule 3.850."
The facts as stated in the opinion of the District Court are in pertinent part as follows:[1]
"The appellants were found guilty after a jury trial of robbery. Galtieri was sentenced to prison for twenty-five years and Matera was sentenced to prison for life. Appeals were brought by both appellants and the judgments and sentences were affirmed.
"Thereafter a motion for relief pursuant to CrPR 1.850 was brought on behalf of both appellants seeking relief upon several grounds. This motion was with the court's permission amended and supplemented. The trial judge entered an order for evidentiary hearing. Later upon a review of the entire record, after the filing of a supplemental affidavit, the trial judge entered the order appealed which rescinded the order for evidentiary hearing and denied the motion as supplemented without evidentiary hearing.
"Our review of the record convinces us that there is only one ground in the motion and amended motions which is not either refuted by the record or foreclosed by the appeal from the judgment. The appellants allege that at their trial the state used the testimony of one Bruce Braverman, and that during the trial it was revealed that Braverman had, on more than one occasion, testified before a New York State Grand Jury. It was further alleged that the state knew of grand jury testimony which would have impeached the testimony of Braverman at the trial.
"A withholding by the state of knowledge of evidence known to be useful to the defendant, even though useful only for impeachment purposes, can be grounds for a new trial. See Pitts v. State, Fla. 1971, 247 So.2d 53; State v. Pitts, Fla. App. 1971, 249 So.2d 47."
The Florida rule in question, Rule number 3.850, 33 F.S.A., was adopted from, and is essentially verbatim, § 2255 of Title 28 of the U.S.Code, in effect since June *663 25, 1948. The Reviser's Note following § 2255 states:
"This section restates, clarifies and amplifies the procedure in the nature of the ancient writ of error coram nobis. It provides an expeditious remedy for correcting erroneous sentences without resort to habeas corpus."[2]
Our rule, like its federal counterpart, does not create new substantive rights. Its purpose is to afford an efficient procedure for post-conviction relief "on any grounds which subject them [convictions] to collateral attack."[3] No new grounds for post-conviction relief were created by the rule. Thus, in Birtch v. United States, the United States Circuit Court of Appeal, Fourth Circuit, stated:[4]
"Relief under 28 U.S.C.A. § 2255 may be granted only where it appears `that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack.' It should be borne in mind that the purpose of the section was not to enlarge the class of attacks which may be made upon a judgment of conviction, but to provide that the attack must be made in the court where the sentence was imposed and not in some other court through resort to habeas corpus, unless it appears that the remedy by motion is inadequate." (e.s.)
This Court in Austin v. State,[5] quoted with approval from the Birtch case and stated:
"It is therefore clear that Section 2255 is not intended to broaden the class of attacks which may be made upon a judgment of conviction or sentence; rather, the attack through motion to vacate must be made under the conditions specified."
In the Austin case, this Court went on to hold:[6]
"As to appellant's contention of false swearing or use of perjured testimony, a reading of this portion of the motion shows it to constitute an attempt to argue the credibility of testimony given by certain state witnesses and claimed conflicts in that testimony. Additionally, in order to have a sentence set aside on the ground that perjured testimony was used, it is necessary for the motion to show that the testimony was perjured and that the prosecuting officials, at the time of its use, knew it was perjured.
Credibility of a witness, as such, like sufficiency of the evidence, has not been recognized as a ground supporting collateral attack on a conviction. Even a petition alleging perjury of a witness at trial is insufficient unless it is also alleged that the perjured testimony formed the basis of the conviction, was knowingly used by the prosecution and was unknown to defendant at the time of trial or during appeal.[7] The somewhat related ground of *664 knowing suppression of evidence by the State must also be accompanied by allegations that the evidence suppressed was essential to the conviction and that defendant was unaware of its existence or unable to obtain its disclosure.[8] Similarity between the foregoing requirements for post-conviction relief under modern rules with the requirements of the ancient writ of coram nobis are apparent.[9]
The amended motion to vacate, filed April 22, 1970, contains the following allegations pertinent to the question certified:
"Testimony was given by one Bruce Braverman who at the time was incarcerated in the State of New York. Utilization of Grand Jury testimony for cross-examination of Braverman revealed that other Grand Jury testimony had been given by Braverman which was not available to the Defendants or their attorneys at trial. It has just been revealed to counsel for Defendants that prior New York Grand Jury testimony of Braverman completely impeached the statements presented to the jury in this Court. The Defendants were not aware of the substance of the prior Grand Jury testimony in New York. The State, however, was aware of that testimony. The State of Florida, through its close association with the New York authorities, knew or should have known that contradictory testimony had been given and would have exculpated the Defendants."
The trial court, in its order of July 6, 1970, denying the motion to vacate without evidentiary hearing, points out that the defendants admittedly knew at the time of trial that Bruce Braverman had given testimony more than once to a Grand Jury in New York and that Braverman was called as a court witness and both sides were given ample opportunity to cross-examine him.
The record reveals that Braverman, called as a court's witness, was questioned by the Judge initially and impeached by both sides. Braverman stated that he was a convicted felon and had known the defendant for approximately sixteen months. He testified that he saw the defendants in New York on March 16, 1966, and engaged in general conversation but with no mention being made of the Harbor Island Spa. the Florida establishment subsequently robbed by the defendants. At this point the State impeached the witness Braverman by showing contradictory statements given before a New York Grand Jury on July 21, 1966.[10]
During his testimony, Braverman repeatedly referred to the fact that he had testified at two Grand Jury proceedings in the State of New York, one on May 18 and one on July 21, 1966. At one point, the witness volunteered that the statements he had made at the two Grand Jury proceedings might be inconsistent. There followed a lengthy discussion between the court and *665 counsel out of the presence of the jury as to whether it was necessary to obtain the transcript of Braverman's testimony in the first Grand Jury proceeding. Defense counsel accused the prosecuting attorney of having access to the transcripts of both proceedings in New York and choosing to bring back only the one favorable to the State. This charge was categorically denied by the prosecuting attorney. The Judge concluded that the testimony from the last Grand Jury proceeding in New York could be used for impeachment.
After the jury was brought back in, Braverman admitted that he had testified before the New York Grand Jury that the defendant Galtieri told him when they met in New York in March of 1966 that he was going to Miami, Florida, to make a "score", meaning to steal some money; that Braverman had asked Galtieri for a loan of $1,000 and been told that he could have the money when he, Galtieri, got back from Miami. This was the sum total of Braverman's testimony as it pertained to the robbery of the Harbor Island Spa, for which the defendants were on trial.
Braverman was so extensively impeached by both the prosecution and the defense, covering hundreds of pages of transcript, that little, if anything, remained of his credibility. But even if the jury chose to rely on his testimony that one of the defendants said in March of 1966 that he was going to Miami to make a "score" and infer therefrom that the Harbor Island Spa robbery was the intended "score", the evidence is of little significance in the case. Defendants Galtieri and Matera were unequivocally identified by the night auditor of the Harbor Island Spa and a laundry truck driver, both of whom were accosted and handcuffed by the defendants, who wore no masks during the robbery.
As we have indicated, the matter of Mr. Braverman's credibility was extensively litigated at the trial. The question was submitted to the jury on special instruction from the Court that excerpts from prior testimony given by the witness be considered only for impeachment purposes. On appeal, the matter of Braverman's testimony was assigned as error. The District Court fully considered the matter in its opinion and concluded that no prejudicial error was committed.[11] This Court denied certiorari without opinion.[12] The United States Supreme Court denied defendants' petition for writ of certiorari on December 8, 1969.[13]
Petition for motion to vacate in this case is a classic example of what post-conviction relief is not intended to be, that is, a procedure for retrial of matters of fact or questions of law litigated below. Nothing of consequence has been raised by the defendants in their motions to vacate or briefs in this Court which was not raised and litigated in the trial and appellate courts following their convictions.
In Green v. United States,[14] the United States Court of Appeal, First Circuit, considered a motion to vacate which alleged that defendants, while in a neighboring cell, overheard an assistant United States attorney persuade a codefendant to commit perjury in return for the promise of a light sentence and freedom from deportation. In denying the motion to vacate, the Federal Court held:[15]
"It is clear that this asserted information, of which Green was admittdly aware before he went on trial, cannot now be used as a basis for attacking the judgment of conviction collaterally in a proceeding under 28 U.S.C. § 2255."
*666 In Elliott v. United States,[16] the United States Circuit Court of Appeal, 8th Circuit, affirmed the denial of a motion to vacate a judgment of conviction for violation of narcotics laws, stating:
"If the two government witnesses in the instant case did give perjured testimony, appellant and his counsel were aware of it at the time. Appellant himself testified and attempted to contradict the testimony of the two witnesses. His own attorney became a witness in his behalf and testified to the alleged statement by Parks contained in the Swanson affidavit, here presented. The jury had this information. They apparently chose not to believe the appellant and to place some credence in the witnesses whom the appellant now charges with perjury. We have nothing more here than an attack upon the credibility of the government's witnesses  co-defendants who changed their pleas from `not guilty' to `guilty' and were not sentenced until after appellant and the other co-defendants were tried. This was before the jury and was passed upon adversely to appellant."
In United States v. Pheribo,[17] the United States Circuit Court of Appeal, Second Circuit, ruled that an evidentiary hearing was "totally unnecessary" stating:
"Pheribo then brought this § 2255 proceeding to vacate and set aside the judgment of conviction and sentence, contending that the trial was vitiated by the Government's knowing use of the allegedly perjured testimony of co-defendant Lovejoy, who purportedly lied in denying that he had been promised leniency for testifying. After studying the full record, but without holding an evidentiary hearing, the District Court denied the requested relief.
"The very papers submitted by Pheribo clearly indicate that Lovejoy was thoroughly cross-examined at the trial, and his possible bias, prejudice or motive for testifying  stemming from expectations of leniency in sentencing  was fully brought home to the jurors. The credibility question thus amply presented must have been resolved adversely to Pheribo and may not, without more, be reopened on this motion."
In Kyle v. United States,[18] a motion to vacate alleging government suppression of certain correspondence and false testimony by government witnesses, was held properly denied without a hearing on the ground that these matters were known to the defendant and could have been raised or pursued further at the trial. In Kyle, the United States Court of Appeal, Second Circuit, stated:[19]
"There is a distinction between discovering new or additional facts after the trial, and having new implications from the old evidence occur to the defendant through his own later inspiration or through the ingenuity of his counsel. A hearing under § 2255 will not be ordered simply because in retrospect the same or new defense counsel can now point out that cross-examination should have been more thorough or should have followed a different course or that certain claims should have been pressed with a greater or somewhat different emphasis."
If the matter forming the basis of a motion to vacate was known to the defendant at the time of trial, it will not support a collateral attack on the judgment of conviction. This is true whether the matter was litigated at trial, as in the instant case, or withheld and not litigated at trial. Thus, in McGuinn v. United *667 States,[20] the United States Circuit Court of Appeal, District of Columbia, stated:
"The first allegation of perjury concerned a government witness who testified as to the complainant's emotional state following the alleged offense. Appellant tells us that this witness lied when she testified that she did not know him. If that testimony was false, appellant knew it at the trial but made no attempt to demonstrate it by cross examination, by his own testimony or by that of rebutting witnesses, who were as readily available then as now. Appellant must be regarded as having waived this objection."
The motions to vacate in the instant case are fatally defective because grounded on matters known generally to the defendants at the trial and litigated below. In addition, the motions do not contain specific allegations as to the nature of the perjury charged, its knowing use by the prosecution[21] and the materiality of the alleged perjury to defendants' convictions. As to materiality, we have already indicated that a review of the record reveals the nonessential nature of the Braverman testimony. Defendants' convictions are amply supported by eye-witness testimony identifying them as the robbers. One of the requirements for post-conviction relief on the grounds of newly discovered evidence, such as perjury, is that the evidence be an essential part of the case against the defendant.[22] Bare charges of suppression of evidence or knowing use of perjured testimony to obtain a conviction without accompanying facts are insufficient to require an evidentiary hearing under Rule 3.850, Rules of Criminal Procedure. In Castellana v. United States,[23] the United States Court of Appeal, Second Circuit, held:
"Intended as their grand coup, the appellants hurl the completely unsupported charge that the Government suppressed certain civil deposition testimony. They claim that this evidence would have indicated, contrary to the testimony of its witness Abe Platt, that Castellana did not attend certain conspiratorial meetings at the Roundtable Restaurant in Manhattan in April 1961. And, they go on to assert that Platt's testimony was perjurious and was coerced by the Government. With regard to the claim of this suppression, our examination reveals that the depositions in question were received in evidence at the trial and copies of them given to and seen by the defense attorneys.
* * * * * *
"[W]e find wholly without merit appellant's claim that Platt was coerced by the Government into giving false testimony to implicate Castellana. In our examination of the record on the initial appeal, we observed that similar suggestions were made at the trial during Platt's cross-examination. But the jury observed Platt on the witness stand and adjudicated his credibility. Moreover, there is nothing but appellants' bald conclusory charge, unaccompanied by any facts, to indicate that the Government knowingly and intentionally used perjured testimony. Accordingly, they were properly denied a hearing."
*668 This Court's decision in State v. Pitts,[24] is not contrary to any of the authorities cited. The Pitts case was decided on the basis of a "motion in confession of error" by the Attorney General requesting return to the trial court for the purposes of a new trial. The motion to vacate in that case, based on a number of grounds, was held insufficient by the District Court in its decision.[25] The case was certified to this Court as one passing on a question of great public interest, to-wit: Whether collateral attacks on judgments imposing the death penalty should be directly appealable to the Supreme Court rather than to the District Court of Appeal. This Court never considered the particular grounds cited in support of the motion to vacate or the question certified in the Pitts case due to the Attorney General's confession of error and request for a new trial for the defendants in that case.
Accordingly, the question certified is answered in the negative, as qualified by the foregoing authorities. Credibility of a witness is not, in itself, a basis for post-conviction relief. The motion to vacate must allege facts indicating that the conviction was obtained through the knowing use of perjured testimony or suppression of evidence by the State, which perjury or suppressed evidence was unknown to the defendant at the time of trial. Unsupported charges are not sufficient and an evidentiary hearing is not required where the motion to vacate and supporting record reveal fatal flaws in the grounds alleged. The decision of the District Court of Appeal is quashed and the cause remanded for further proceedings consistent herewith.
It is so ordered.
ROBERTS, C.J., and ERVIN, ADKINS and McCAIN, JJ., concur.
NOTES
[1] 254 So.2d 843, 844 (Fla.App.3rd 1971).
[2] 28 U.S.C.A. § 2255 at p. 3.
[3] Roy v. Wainwright, 151 So.2d 825, 828 (Fla. 1963).
[4] 173 F.2d 316, 317 (CCA 4th), cert. denied 337 U.S. 944, 69 S.Ct. 1500, 93 L.Ed. 1747 (1949).
[5] 160 So.2d 730, 731 (Fla.App. 1964).
[6] Id. at 732.
[7] Anderson v. United States, 403 F.2d 451, 454 (CCA 7th 1968), cert. denied 394 U.S. 903, 89 S.Ct. 1009, 22 L.Ed.2d 215 (1969): "The law applicable to the knowing use of perjury at trial is settled. A criminal conviction procured by the use of testimony known by the prosecuting authorities to be perjured and knowingly used by them in order to procure a conviction does not comport with due process of law and is violative of a defendant's constitutional rights. * * * The knowing use by the Government of perjured testimony in order to obtain a conviction would, if proved, be grounds under section 2255 for vacation of a conviction under circumstances such as exist here where the petitioners assert that they were unaware of the alleged perjury both at the time of the trial and the appeals. A defendant has the burden of making a showing, not only that material perjured testimony was used to convict him, but that it was knowingly and intentionally used by the prosecuting authorities to do so. * * *"
[8] Clarke v. Burke, 440 F.2d 853 (CCA 7th 1971); Fuller v. Wainwright, 238 So.2d 65 (Fla. 1970).
[9] Cole v. Walker Fertilizer Co., 147 Fla. 1, 1 So.2d 864, 866 (1941): "The function of a writ of error coram nobis is to bring to the attention of the court, for correction, some matter of fact which does not appear on the face of the record and unknown to the court or to the parties or counsel at the trial, and which, if known, and properly presented would have prevented the rendition of said judgment."
[10] Defense counsels were supplied a copy of this testimony and sought to prevent its use on the grounds that proceedings before a Grand Jury are confidential and secret. The State produced its authorization from the State of New York for release of the testimony and the court allowed Braverman to be questioned regarding his prior testimony.
[11] Matera v. State, 218 So.2d 180, 183 (Fla.App.3rd 1969).
[12] Matera v. State, 225 So.2d 529 (Fla. 1969).
[13] Galtieri v. Florida, 396 U.S. 955, 90 S.Ct. 424, 24 L.Ed.2d 420 (1969).
[14] 256 F.2d 483 (CCA 1st), cert. denied, 358 U.S. 854, 79 S.Ct. 83, 3 L.Ed.2d 87 (1958).
[15] 256 F.2d 483, 484 (CCA 1st 1958).
[16] 268 F.2d 135, 137 (CCA 8th 1959).
[17] 346 F.2d 559, 560 (CCA 7th), cert. denied, 382 U.S. 871, 86 S.Ct. 149, 15 L.Ed.2d 110 (1965).
[18] 266 F.2d 670 (CCA 2d), cert. denied, 361 U.S. 870, 80 S.Ct. 131, 4 L.Ed.2d 109 (1959).
[19] 266 F.2d 670, 674 (CCA 2d 1959).
[20] 99 U.S.App.D.C. 286, 239 F.2d 449, 451 (1956), cert. denied, 359 U.S. 915, 79 S.Ct. 591, 3 L.Ed.2d 577 (1959); Accord: United States v. De Marie, 261 F.2d 477 (CCA 7th, 1958) (matter known to defendant but not raised at trial); United States v. Abbinanti, 338 F.2d 331 (CCA 2d 1964) (same); McDonald v. United States, 282 F.2d 737 (CCA 9th 1960) (same).
[21] Fuller v. Wainwright, 238 So.2d 65, 66 (Fla. 1970).
[22] United States v. Smith, 306 F.2d 457 (CCA 2d 1962).
[23] 378 F.2d 231, 234 (CCA 2nd 1967); Accord: Griffin v. United States, 103 U.S. App.D.C. 317, 258 F.2d 411 (1957), cert. denied 357 U.S. 922, 78 S.Ct. 1363, 2 L.Ed.2d 1366 (1958).
[24] 241 So.2d 399 (Fla.App.1st 1970).
[25] 247 So.2d 53 (Fla. 1971).