PER CURIAM.
Troy Merck, Jr., appeals an order of the circuit court denying his motion to vacate his conviction of first-degree murder and sentence of death filed under Florida Rule of Criminal Procedure 3.851. He also petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. For the reasons that follow, we affirm the denial of his motion and deny his habeas petition.
OVERVIEW
Troy Merck, Jr., was convicted of first-degree murder following the stabbing of James Anthony Newton, which occurred in the early morning of October 12, 1991, outside of a bar. This Court affirmed Merck’s conviction but twice reversed his sentence due to penalty phase errors. After a third penalty phase, the jury recommended the death sentence by a vote of nine to three. After a Spencer[1] hearing, the trial judge sentenced Merck to death. This Court affirmed Merck’s sentence. Merck v. State (Merck III), 975 So.2d 1054, 1067 (Fla.2007).
Merck filed a postconviction motion asserting various claims, and after an eviden-tiary hearing on some of those claims, the postconviction court denied Merck’s motion. Merck has appealed. Merck has also filed a habeas corpus petition.
FACTS AND PROCEDURAL HISTORY
This Court summarized the facts underlying Merck’s conviction:
Newton died after Merck repeatedly stabbed him while the two men were in the parking lot of a bar in Pinellas County shortly after 2 a.m. on October 12, 1991. The bar had closed at 2 a.m., and several patrons of the bar remained in the parking lot. The evidence was that several of these individuals, including the victim, Merck, and those who witnessed the murder, had consumed a substantial amount of alcohol during the evening while at the bar.
After closing, Merck and his companion, both of whom had recently come to Florida from North Carolina, were in the bar’s parking lot. The two were either close to or leaning on a vehicle in which several people were sitting. One of the car’s occupants asked them not to lean on the car. Merck and his companion sarcastically apologized. The victim approached the car and began talking to the car’s owner. When Merck overheard the owner congratulate the victim on his birthday, Merck made a snide remark. The victim responded by telling Merck to mind his own business. Merck attempted to provoke the victim to fight; however, the victim refused.
*791 Merck then asked his companion for the keys to the car in which he had come to the bar. At the car, Merck unlocked the passenger-side door and took off his shirt and threw it in the back seat. Thereafter, Merck approached the victim, telling the victim that Merck was going to “teach him how to bleed.” Merck rushed the victim and began hitting him in the back with punches. The person who had been talking to the victim testified that she saw a glint of light from some sort of blade and saw blood spots on the victim’s back. The victim fell to the ground and died from multiple stab wounds; the main fatal wound was to the neck.
Merck was indicted on November 14, 1991, for the first-degree murder of James Anthony Newton. The case went to trial and ended in a mistrial on November 6, 1992, because the jury was unable to reach a verdict. After a second trial, Merck was found guilty as charged. The jury recommended death by a vote of nine to three.... The trial court sentenced Merck to death.
Merck v. State (Merck I), 664 So.2d 989, 940-41 (Fla.1995).[2]
On October 12, 1995, this Court affirmed the conviction but reversed Merck’s death sentence because it found that a North Carolina juvenile adjudication presented to the jury was not a “conviction” within the meaning of the prior violent felony aggra-vator and that admitting evidence regarding this adjudication was harmful error. Id. at 944. A second penalty phase proceeding was conducted in July of 1997. That- jury unanimously recommended a death sentence, which- the trial court imposed.[3] On July 13, 2000, this Court once again reversed the death sentence because the trial court failed to adequately consider nonstatutory mitigation in its sentencing order and inappropriately applied the felony probation aggravator, which did not exist at the time of Newton’s murder. Merck v. State (Merck II), 763 So.2d 295, 298-99 (Fla.2000).
On March 17-19, 2004, a third penalty phase was. conducted. The jury recommended the death sentence by a vote of nine to three. After a Spencer hearing, the trial judge sentenced Merck to death on August 6, 2004, finding two aggravating factors: prior violent felony and heinous, atrocious, or cruel; one statutory mitigating factor: age of nineteen at the time of the offense; and three nonstatutory mitigating factors: difficult childhood/relationship with mother, under influence of alcohol--at the time of the offense, and capacity for growth as evidenced by his social improvements while in .prison. On appeal from the third resentencing, Merck raised the following claims: (1) whether the trial court improperly excluded evidence relating to Merck’s presumptive parole date that was relevant to the jury’s determination of sentence; (2) whether the trial court improperly excluded evidence that was relevant to the nature and circumstance of the offense, had bearing on the finding of an aggravating factor, and could have been the basis for additional mitigating factors; (3) whether improper remarks *792 to the jury, made by the assistant state attorney during closing argument, denied Merck of a fair penalty phase proceeding; (4) whether the death sentence must be reversed because the trial coui*t failed to find or gave too little weight to mitigating factors; (5) whether the death sentence imposed is proportionate; and (6) whether Florida’s death penalty statute is unconstitutional. On appeal, this Court affirmed Merck’s sentence of death. Merck III, 975 So.2d at 1059, 1067.
Merck filed a postconviction motion in the trial court raising the following issues: (1) Merck was denied the effective assistance of counsel at the guilt/innocence phase of his capital trial, and as a result, Merck’s convictions and death sentence are unreliable; (2) Merck did not receive effective assistance of counsel throughout his penalty phase; (3) Florida’s death penalty statute is facially vague and over-broad, and the penalty phase jury received unconstitutional instructions that diluted its sense of responsibility in determining the proper sentence, which constituted fundamental error because counsel did not litigate these issues; (4) Florida’s capital sentencing statute is unconstitutional on its face and as applied for failing to prevent the arbitrary and capricious imposition of the death penalty, and to the extent that counsel did not litigate this issue, Merck received ineffective assistance of counsel; (5) the heinous, atrocious, or cruel jury instruction was unconstitutionally vague and overbroad; (6) Merck’s trial was fraught with procedural and substantive errors, which, as a whole, deprived Merck of a fundamentally fair trial; and (7) the death penalty is cruel and unusual punishment as applied to Merck who may be incompetent at the time of execution. Merck asserted that claims 1 and 2 of his postconviction motion required an eviden-tiary hearing, and the postconviction court granted an evidentiary hearing on those claims. Merck asserted that claims 3-7 did not necessitate an evidentiary hearing and that he was only raising the claims in order to preserve them for federal review. After an evidentiary hearing on claims 1 and 2, the trial court denied those claims and summarily denied the claims for which Merck did not request an evidentiary hearing.
Merck has appealed, raising the following issues for this Court’s review: (1) whether the postconviction court erred in denying the claim that trial counsel was ineffective in (a) presenting two defense theories and (b) failing to object to an improper and misleading jury instruction in the guilt phase of the trial; (2) whether the postconviction court erred in denying the claim that trial counsel was ineffective for failing to strike two jurors whose statements during voir dire revealed that they were incapable of being impartial regarding the death penalty; (3) whether counsel’s failure to proffer testimony to show that. Merck was a minor participant in the crime deprived him of his right to a fair trial; (4) whether the failure of law enforcement to keep and preserve evidence was a bad faith failure to preserve exculpatory evidence in violation of Merck’s right to due process; (5) whether the postcon-viction court erred in denying the claim that Merck did not receive effective assistance of counsel during the penalty phase because counsel did not present his mental health expert to the jury; and (6) whether counsel was ineffective in the penalty phase by failing to ask for statutory mental mitigators at the charge conference.
Merck has also filed a habeas corpus petition, raising the following issues: (1) whether cumulative error deprived Merck of a fair trial; (2) whether the sentence of death constitutes cruel and unusual punishment based on Merck’s incompetency; (3) whether Florida’s death penalty statute *793 is unconstitutional as applied to Merck’s case; and (4) whether counsel was ineffective for failing to allege that Florida’s capital sentencing statute is unconstitutional on its face and as applied to Merck’s case.
Merck filed a pro se all writs petition while his postconviction appeal was pending in this Court, asserting that his post-conviction counsel was ineffective because counsel failed to raise all of the claims Merck wished to address and requesting new counsel. This Court denied the petition on the merits. Merck v. State, 60 So.3d 387 (Fla.2011) (table decision).
As explained below, we affirm the trial court’s denial of relief and deny Merck’s habeas petition.
POSTCONVICTION MOTION
Ineffective Assistance of Counsel Claims
Merck raises the following ineffective assistance of counsel claims: (1) whether the postconviction court erred in denying the claim that trial counsel was ineffective in (a) presenting two defense theories and (b) failing to object to an improper and misleading jury instruction in the guilt phase of the trial; (2) whether the postcon-viction court erred in denying the claim that trial counsel was ineffective for failing to strike two jurors whose statements during voir dire revealed that they were incapable of being impartial regarding the death penalty; (3) whether counsel’s failure to proffer testimony during the penalty phase to show-that Merck was a minor participant in the crime deprived him of his right to a fair trial; (4) whether the postconviction court erred in denying the claim that Merck did not receive effective assistance of counsel during the penalty phase because counsel did not present his mental health expert to the penalty phase jury; and (5) whether counsel was ineffec-five in the penalty phase for failing to ask for statutory mental mitigators at the charge conference.
Standard of Review
Following the United State Supreme Court’s decision in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), this Court has held that for ineffective assistance of counsel claims to be successful, the defendant must demonstrate both deficiency and prejudice:
First, the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. Second, the clear, substantial deficiency shown must further- be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined.
Bolin v. State, 41 So.3d 151, 155 (Fla.2010) (quoting Maxwell v. Wainwright, 490 So.2d 927, 932 (Fla.1986)).
There is a strong presumption that trial counsel’s performance was not deficient. See Strickland, 466 U.S. at 690, 104 S.Ct. 2052. “A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time.” Id. at 689, 104 S.Ct. 2052. The defendant carries the burden to “overcome the presumption that, under the circumstances, the challenged action ‘might be considered sound trial strategy.’ ” Id. (quoting Michel v. Louisiana, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)). “Judicial scrutiny of counsel’s performance must be highly deferential.” Id. “[Strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been con *794 sidered and rejected and counsel’s decision was reasonable under the norms of professional conduct.” Occhicone v. State, 768 So.2d 1037, 1048 (Fla.2000). Furthermore, where this Court previously has rejected a substantive claim on the merits, counsel cannot be deemed ineffective for failing to make a meritless argument. Melendez v. State, 612 So.2d 1366, 1369 (Fla.1992).
In demonstrating prejudice, the defendant must show a reasonable probability that “but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Strickland, 466 U.S. at 694, 104 S.Ct. 2052.
Because both prongs of the Strickland test present mixed questions of law and fact, this Court employs a mixed standard of review, deferring to the circuit court’s factual findings that are supported by competent, substantial evidence, but reviewing the circuit court’s legal conclusions de novo. See Sochor v. State, 883 So.2d 766, 771-72 (Fla.2004).
Johnston v. State, 63 So.3d 730, 737 (Fla.2011) (parallel citations omitted).
1. Voluntary Intoxication Defense and Jury Instructions
First, Merck asserts that defense counsel was ineffective during the guilt phase of his trial for presenting two defense theories of (1) reasonable doubt of the identity of the perpetrator and (2) voluntary intoxication. We disagree. “Inconsistent defenses are allowable in criminal cases where the proof of one does not necessarily disprove the other.” Phillips v. State, 874 So.2d 705, 707 (Fla. 1st DCA 2004). Such strategic decisions do not necessarily fall below the standard of reasonable assistance of counsel so as to be deemed deficient. See Ford v. State, 955 So.2d 550, 553-54 (Fla.2007) (counsel not ineffective for presenting evidence of voluntary intoxication, even though the main defense was that the State’s case was inadequate to show defendant’s guilt, because the intoxication defense was not advanced as an admission of guilt, was secondary to the main defense, and “to the extent it was offered as a defense, it was done to defeat the premeditation element of the murder charge”). Here, Merck’s defense counsel was not deficient for presenting these two theories because counsel never admitted Merck’s guilt in advancing the intoxication theory, primarily focused on the theory of reasonable doubt as to the adequacy of the State’s case, and used the intoxication defense to negate premeditation. As Frederic Zinober, co-counsel during Merck’s guilt phase trial, testified during the post-conviction evidentiary hearing, based on Merck’s and other witnesses’ statements regarding how many drinks Merck had consumed on the night of the murder, he believed a secondary voluntary intoxication defense was an appropriate strategy if the jury did not believe the defense’s main theory that the State had not proven beyond a reasonable doubt that Merck was the perpetrator. Accordingly, counsel was not deficient for presenting both theories to the jury. See id.; Dufour v. State, 905 So.2d 42, 52 (Fla.2005) (“This Court has held that it will not second-guess counsel’s strategic decisions concerning whether an intoxication defense will be pursued.”). We need not address the prejudice prong of the Strickland test since Merck cannot meet the deficiency prong. See Evans v. State, 946 So.2d 1, 12 (Fla.2006) (“[Because the Strickland standard requires establishment of both [deficient performance and prejudice] prongs, when a defendant fails to make a showing as to one prong, it is not necessary to delve into whether he has made a showing as to the other *795 prong.”) (quoting Whitfield v. State, 923 So.2d 375, 384 (Fla.2005)).
Secondly, Merck contends that trial counsel was ineffective because he did not object to the trial court’s characterization of voluntary intoxication as the sole defense rather than one of the defenses. Merck asserts that this misled the jury because voluntary intoxication was not “the” defense asserted, but rather a lesser, secondary defense, and innocence based on reasonable doubt of the identity of the perpetrator was the main defense. Merck fails to establish prejudice for this claim.
Zinober conceded during the postconviction evidentiary hearing that it would have been preferable for the trial court to correctly state that voluntary intoxication was “a” defense rather than “the” defense. However, the record indicates that the jury heard both defenses throughout the trial. During the defense’s closing argument, after discussing voluntary intoxication, Zinober argued to the jury that the main defense was that the State had not adequately proven that Merck committed the murder and recounted evidence that had been introduced during the trial that supported this theory. Based on the evidence provided to the jury throughout the trial regarding both defenses, the trial court’s statement does hot appear to have misled the jury to believe voluntary intoxication was the sole asserted defense. Therefore, Merck has not established prejudice. See Johnston, 63 So.3d at 737. We need not address the performance prong of the test since Merck cannot meet the prejudice prong. See Evans, 946 So.2d at 12. Accordingly, we affirm the trial court’s denial of this claim.
2. Penalty Phase Jurors
Merck asserts that counsel was ineffective for failing to move to strike two jurors who he claims were predisposed to vote for the death penalty. We disagree.
“The test for determining juror competency is whether the juror can lay aside any bias or prejudice and render his verdict solely upon the evidence presented and the instructions on the law given to him by the court.” Lusk v. State, 446 So.2d 1038, 1041 (Fla.1984). Jurors who initially express strong views pertaining to the death penalty are permitted to serve if they clearly indicate an ability to abide by the trial court’s instructions. Johnson v. State, 660 So.2d 637, 644 (Fla.1995); Bryant v. State, 656 So.2d 426, 428 (Fla.1995). Where a lawyer’s incom petence involves the failure to preserve a cause challenge to a juror, the proper inquiry for deciding whether prejudice for purposes of an ineffective assistance claim has occurred is whether the failure to preserve a challenge to a juror resulted in a biased juror serving on the jury. Carratelli v. State, 961 So.2d 312, 324 (Fla.2007). If a lawyer’s error did not result in the seating of a biased juror, then postconviction relief on the basis of the lawyer’s alleged ineffectiveness is not appropriate. See id.
A review of the record shows that the challenged jurors were not biased or predisposed to vote for the death penalty. The challenged jurors’ responses to questions during voir dire did not reveal that they were leaning toward imposing the death penalty or that they had preconceived notions that made them biased. As Watts, defense co-counsel with Schwartz-berg during the penalty phase trial, testified at the. postconviction evidentiary hearing, the statements made-by the challenged jurors were consistent with those of people willing to listen to both sides and not people who would automatically vote for the death penalty. The challenged jurors confirmed that they would base their decisions upon the information *796 presented and would consider evidence of both aggravating and mitigating factors. Therefore, Merck has not established prejudice. We need not address the performance prong of the test since Merck cannot meet the prejudice prong. See Evans, 946 So.2d at 12. Accordingly, we affirm the trial court’s denial of this claim.
3. Minor Participant Evidence
Merck asserts that his penalty phase counsel was ineffective for failing to proffer testimony which would have demonstrated that Merck was a minor participant in accordance with section 921.141(6)(d), Florida Statutes. Specifically, Merck contends that because counsel failed to proffer evidence that Merck may not have been the murderer, that evidence was not preserved for appellate review. Merck contends that had this evidence been properly preserved by proffer, this Court would have been able to review that evidence and would have reversed his death sentence. Merck’s claim is without merit.
To establish prejudice, Merck must show that if the testimony had been proffered, there is a reasonable probability that “ ‘but for counsel’s unprofessional errors, the result of the proceeding would have been different.’ ” Johnston, 63 So.3d at 737 (quoting Strickland, 466 U.S. at 694, 104 S.Ct. 2052). “A defendant has the right in the penalty phase of a capital trial to present any evidence that is relevant to, among other things, the nature and circumstances of the offense.” Downs v. State, 572 So.2d 895, 899 (Fla.1990). In the penalty phase, a trial judge is permitted to consider as mitigating evidence the fact that a defendant was an accomplice in the capital felony and that his or her participation was relatively minor. See § 921.141(6)(d), Fla. Stat. (2007). However, the evidence that Merck now claims should have been proffered and considered by the jury at his penalty phase was not evidence of his minor participation, but rather of his innocence.
“[W]here the sole purpose for seeking to have the evidence admitted [is] to show residual or lingering doubt of [the defendant’s] innocence,” the evidence is inadmissible at the penalty phase. England v. State, 940 So.2d 389, 406 (Fla.2006). As Watts conceded during the postconviction evidentiary hearing, the evidence the defense sought to admit during the penalty phase would have been used to raise fingering doubt as to whether Merck was the actual perpetrator and was inadmissible for this reason. Merck does not have a right to re-litigate his guilt during the penalty phase after being found guilty as the perpetrator in the guilt phase. See, e.g., Williamson v. State, 961 So.2d 229, 237-38 (Fla.2007) (reiterating that “ ‘residual or fingering doubt ... is not an appropriate matter to be raised in mitigation during the penalty phase proceedings of a capital case.’ ”) (quoting Rose v. State, 675 So.2d 567, 572 n. 5 (Fla.1996)).
Even if counsel had proffered the evidence, evidence of fingering doubt, it would have been inadmissible at the penalty phase. Therefore, Merck has not established prejudice. See Johnston, 63 So.3d at 737. We need not address the performance prong of the test since Merck cannot meet the prejudice prong. See Evans, 946 So.2d at 12. Accordingly, we affirm the trial court’s denial of this claim.
4. Mental Health Expert Testimony
Merck asserts that during his third penalty phase, defense counsel Schwartzberg rendered ineffective assistance by failing to provide his mental health expert, Dr. Maher, with sufficient background information regarding Merck’s mental mitigation and in making an un *797 informed decision not to call Dr. Maher to testify before the jury. Merck contends that had Dr. Maher testified in front of the penalty phase jury, two statutory miti-gators would have been established: (1) under extreme mental or emotional disturbance, and (2) capacity to conform conduct to the law was impaired, which would have resulted in the jury recommending a life sentence rather than death. We find that Merck cannot establish the necessary prejudice regarding this claim.
As this Court has said, “the obligation to investigate and prepare for the penalty portion of a capital case cannot be overstated.” State v. Lewis, 838 So.2d 1102,1113 (Fla.2002).
In determining whether the penalty phase proceedings were reliable, [t]he “failure [of counsel] to investigate and present available mitigating evidence is a relevant concern along with the reasons for not doing so.” Asay v. State, 769 So.2d 974, 985 (Fla.2000) (quoting Rose v. State, 675 So.2d 567, 571 (Fla.1996)) (alterations in original). Thus, when evaluating claims that counsel was ineffective for failing to present mitigating evidence, the defendant must show that counsel’s ineffectiveness “deprived the defendant of a reliable penalty phase proceeding.” Id. (quoting Rutherford v. State, 727 So.2d 216, 223 (Fla.1998)).
Orme v. State, 896 So.2d 725, 731 (Fla.2005).
While we are concerned at the lack of communication between Schwartzberg and Dr. Maher, Merck has not established the second prong of prejudice to be entitled to relief under an ineffective assistance of counsel claim. The record indicates that Dr. Maher was informed about Merck’s background and mental conditions. Dr. Maher’s 1992 deposition provides that Maher discussed his mental diagnoses of Merck, including his opinion that Merck suffered from Post Traumatic. Stress Disorder (PTSD), Attention Deficit Hyperactivity Disorder (ADHD), ptosis, fetal alcohol effect, brain injuries and alcoholism. Dr. Maher’s 2003 deposition includes his opinion that Merck qualified for the statutory mitigators of (1) under extreme mental or emotional disturbance, and (2) capacity to conform conduct to the law was impaired. Schwartzberg and Watts had at their disposal the 1992 deposition and were present at the 2003 deposition and thus Merck’s defense counsel would have been aware of Dr. Maher’s diagnoses of Merck.
The postconviction evidentiary hearing also provided evidence that the State was prepared to introduce the following negative evidence in rebuttal to Dr. Maher’s testimony: Merck’s violent history; Dr. Sloman’s diagnosis of Merck as having antisocial personality disorder — a diagnosis which Dr. Maher conceded was detrimental to the defense’s case; Merck’s admission that he stabbed the victim; and Merck’s acknowledgement that the way he responded on the night of the murder was beyond what he thought was necessary to protect himself. Dr. Maher testified at the postconviction evidentiary hearing that Merck suffered, from an impulsivity disorder. This allowed the State to inquire into the basis for the diagnosis, and subsequently elicit testimony about Merck’s violent history. Dr. Maher confirmed his awareness of several violent acts committed by Merck and his opinion that each of those was consistent with his diagnosis. Additionally, all of Dr. Maher’s diagnoses of Merck’s mental mitigation were presented to the judge during the Spencer hearing and, as discussed in subsection 5 below, the judge rejected the mental mitigation, which we affirmed on direct appeal. Merck III, 975 So.2d at 1064-66. Furthermore, the jury heard about mitigation from lay witnesses including friends and *798 family who testified about Merck’s disturbing upbringing, and was provided with the “catch-all” mitigation provision.
In light of the mitigation evidence provided by the lay witnesses, the fact that the new information by Dr. Maher would have provided a more negative picture of Merck, and the fact that the trial court rejected the statutory mitigators even after Dr. Maher testified at the Spencer hearing, we find that Merck was not prejudiced by Sehwartzberg’s decision not to call Dr. Maher to testify at the penalty phase jury trial. See Gaskin v. State, 822 So.2d 1243, 1250 (Fla.2002) (“The trial court was also not convinced that Gaskin would have received a life sentence if the evidentiary hearing testimony had been presented at trial because the new evidence merely included much cumulative information that had already been considered and rejected by the trial court, and the new information painted a much more negative and prejudicial picture of Gas-kin.”). Accordingly, because the detrimental effect would likely have outweighed any benefit from Dr.. Maher’s testimony, Merck has failed to establish prejudice. See Johnston, 63 So.3d at 737. Because Merck’s claim fails under the prejudice prong of Strickland, the deficiency prong need not be addressed. See Evans, 946 So.2d at 12.
5. Statutory Mental Mitigators
Merck asserts that counsel was ineffective for failing to request the following statutory mental mitigators be read to the penalty phase jury: (1) the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired, and (2) the capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance. This claim is without merit.
Only where a defendant has presented evidence of a statutory mitigator should the trial judge read the applicable instructions to the jury. See Bryant v. State, 601 So.2d 529, 533 (Fla.1992) (A “[defendant is entitled to have the jury instructed on the rules of law applicable to [his] theory of the defense if there is any evidence to support such instructions.”) (quoting Hooper v. State, 476 So.2d 1253, 1256 (Fla.1985)).
Here, the defense did not present evidence to the penalty phase jury to support the trial court providing the jury with the statutory mitigation instructions for either (1) the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired, or (2) the capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance. Although the jury heard extensive testimony about Merck’s background and disturbing upbringing through the testimonies of lay witnesses and was instructed on the “catch-all” mitigating factors, these testimonies did not provide evidence that at the time of the murder Merck was under extreme mental or emotional disturbance or that his capacity to conform his conduct to the law was impaired. Accordingly, because no evidence in support of these miti-gators was presented to the jury, counsel was not deficient for failing to request such mitigators be read to the jury. See Cole v. State, 841 So.2d 409, 420-21 (Fla.2003) (counsel not ineffective for failing to request instructions for extreme emotional and mental disturbance and impaired capacity statutory mental mitigators because the psychologist did not render an opinion during the penalty phase concerning whether the two statutory mitigators applied to the murder for which the defendant was on trial).
*799 Additionally, defense counsel proposed these mitigators to the trial court after the Spencer hearing, which the trial court considered and rejected in its sentencing order. We addressed the merits of Merck’s claim that the trial court erred in failing to consider these statutory mental mitigators in its decision in Merck III, and denied Merck’s claim on the merits:
Merck argues that the trial judge erred by failing to find two statutory mitigating factors: that Merck was under the influence of extreme mental or emotional disturbance; and that his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired at the time of the stabbing. A trial judge may reject a claim that a mitigating circumstance has been proven, provided that the record contains competent, substantial evidence to support the rejection. Franqui v. State, 804 So.2d 1185, 1196 (Fla.2001) (citing Mansfield v. State, 758 So.2d 636, 646 (Fla.2000)). A trial court’s rejection of a proposed mitigating factor will be upheld on appeal so long as competent, substantial evidence exists to support the rejection. Banks v. State, 700 So.2d 368, 638 (Fla.1997); see also Willacy v. State, 696 So.2d 693, 696 n. 6 (Fla.1997) (noting that Court’s appellate review function does not involve reweighing or reevaluating evidence of aggravating and mitigating circumstances, and receding from prior cases to extent that they indicated otherwise). After reviewing the record, we find that the trial judge did not abuse his discretion in rejecting the proposed mitigating factors because his findings are supported by competent, substantial evidence.
First, competent, substantial evidence supports the trial judge’s finding that Merck’s capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was not substantially impaired. Katherine Sullivan, a friend of the victim who witnessed the stabbing, testified that Merck successfully caught keys thrown to him just moments before the stabbing, despite his alleged alcohol consumption, and that Merck did not have any trouble walking at the time of the murder. Neil Thomas, Merck’s companion on the night of thé murder, testified that Merck did not have any trouble walking or talking as a result of his alcohol consumption. Merck’s efforts to evade police after the stabbing, such as abandoning the car, changing clothes, and hiding in bushes, indicate that he was not too drunk to appreciate the criminality of his actions. Finally, Dr. Sloman, the State’s expert psychologist, testified that he did not believe that impairment from Merck’s personality disorder or his alcohol consumption rose to the level of this statutory aggravator because he concluded that Merck made conscious decisions to behave as he did.
Second, competent, substantial evidence supports the trial judge’s finding that the capital felony was not committed while Merck was under the influence of extreme mental or emotional disturbance. While Dr. Maher, the defense’s expert psychiatrist, testified that he believed Merck was experiencing extreme mental or emotional turmoil at the time of the crime, Dr. Sloman testified that he did not believe that Merck was experiencing extreme mental or emotional distress at the time of the crime. When experts disagree, the trier of fact is entitled to resolve the resulting factual issue. See Walls v. State, 641 So.2d 381, 390 (Fla.1994). Here, the trial court gave greater weight to Dr. Sloman’s testimony. Questions relating to evidentia-ry weight are within the province of the *800 circuit court, and this Court will not reweigh the evidence on appeal. Trotter v. State, 932 So.2d 1045, 1050 (Fla.2006). We defer to the trial judge’s finding that this mitigating factor was not established because his finding was supported by Dr. Sloman’s testimony.
[[Image here]]
. Here, the trial judge described Merck’s difficult childhood and noted Merck’s apparent effort to make “the best of’ being in prison before assigning those mitigating circumstances “some weight.” He also explained in detail his reasons for finding that the mitigating circumstance of Merck’s alcoholism and his alcohol consumption on the night of the murder merited only little weight. Again, after reviewing the record, the trial judge’s assignments of weight to the established mitigating factors do not appear unreasonable or arbitrary given the entirety of the evidence presented. Thus, we find this claim is without merit.
Merck III, 975 So.2d at 1064-66. According to the trial court’s rejection of the statutory mitigators after Dr. Maher provided evidence in support of the miti-gators, the trial court would likely have rejected the statutory mitigators had counsel requested the instructions be read to the jury without the benefit of Dr. Maher’s testimony concerning his opinion that Merck qualified for the mental mitigators. Counsel cannot be deemed deficient for failing to make a meritless argument. See Johnston, 63 So.3d at 737. Because Merck’s claim fails under the deficiency prong of Strickland, the prejudice prong need not be addressed. See Evans, 946 So.2d at 12. Accordingly, we affirm the trial court’s denial of this claim.
Because Merck has failed to establish both prongs of Strickland in any of his ineffective assistance of counsel claims, we affirm the trial court’s denial of his ineffective assistance of counsel claims.
Newly Discovered Evidence Claim
Merck asserts that the destruction of khaki pants -allegedly worn by the perpetrator and found in Merck’s car violated his right to due process because Detective Nestor intentionally destroyed potentially exculpatory evidence. Merck claims that Nestor’s testimony in 1997 provided new evidence of Nestor’s awareness that the khaki pants were of evidentiary value at the time he discarded them. We affirm the postconviction court’s summary denial of this claim.
To obtain a new trial based on newly discovered evidence, a defendant must satisfy a two-prong test:
First, the evidence must not have been known by the trial court, the party, or counsel at the time of trial, and it must appear that the defendant or defense counsel could not have known of it by the use of diligence. Second, “the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial.” [Jones v. State, 709 So.2d 512, 521 (Fla.1998) (Jones II) ]. Newly discovered evidence satisfies the second prong of the Jones II test if it “weakens the case against [the defendant] so as to give rise to a reasonable doubt as to his culpability.” Jones II, 709 So.2d at 526 (quoting Jones v. State, 678 So.2d 309, 315 (Fla.1996)). “If the defendant is seeking to vacate a sentence, the second prong requires that the newly discovered evidence would probably yield a less severe sentence.” Marek v. State, 14 So.3d 985, 990 (Fla.2009) (citing Jones v. State, 591 So.2d 911, 915 (Fla.1991) (Jones I)).
Johnston v. State, 27 So.3d 11, 18-19 (Fla.2010).
*801 The summary denial of a newly discovered evidence claim will be upheld if the motion is legally insufficient or its allegations are conclusively refuted by the record. McLin v. State, 827 So.2d 948, 954 (Fla.2002). Because a court’s decision whether to grant an evidentiary hearing on a Florida Rule of Criminal Procedure 3.851 motion is ultimately based on written materials before the court, its ruling is tantamount to a pure question of law, subject to de novo review. See State v. Coney, 845 So.2d 120, 137 (Fla.2003) (holding that “pure questions of law” that are discernible from the record “are subject to de novo review”). Accordingly, when reviewing a court’s summary denial of an initial rule 3.851 motion, this Court must accept the movant’s factual allegations as true, and this Court will affirm the ruling only if the filings show that the movant has failed to state a facially sufficient claim or that there is no issue of material fact to be determined. See generally Amends. Fla. R. Crim. Proc. 3.851 (Amendments I), 772 So.2d 488, 492 n. 2 (Fla.2000). However, to the extent there is any question as to whether a rule 3.851 movant has made a facially sufficient claim requiring a factual determination, this Court will presume that an evidentiary hearing is required. See generally id.
The postconviction court correctly summarily denied Merck’s claim. Regarding the first prong of a newly discovered evidence claim, Merck contends that Detective Nestor’s testimony in 1997 produced new information that he was aware that the khaki pants were worn by the perpetrator based on information provided by Katherine Sullivan, an eyewitness to the murder. Merck asserts that this new information shows that Nestor intentionally destroyed potentially exculpatory evidence. Merck’s claim is without merit. Merck raised this claim on direct appeal, and this Court denied the claim on the merits:
... Merck asserts that the failure on the part of Detective Nestor to keep as evidence a pair of khaki pants located during the search of the vehicle abandoned by Merck and his companion after the murder, was a bad-faith failure to preserve potentially exculpatory evidence, resulting in a denial of due process. In examining the items found in the vehicle, Detective Nestor meticulously looked at every item found in the car, and a videotape was made of the search. Detective Nestor testified that it was his job as the case agent to determine which of these items had evi-dentiary value. He retained all items that he determined to have evidentiary value, and he left the other items in the vehicle. The vehicle was thereafter available to be picked up by its registered owner. One of the items examined by Detective Nestor was a pair of “baggy khaki colored style pants.” Detective Nestor testified that after he examined those pants and found no blood stains on them, he concluded that they did not have evidentiary value and left the pants in the vehicle.
Merck raised this issue in post-trial motions which were acknowledged not to be timely. Merck asserts that the failure to maintain this evidence was fundamental error and, as such, can be raised for the first time post-trial. We do not agree. Here, the failure to preserve the khaki pants was clearly known by Merck prior to and during the trial. The issue was not preserved by timely objection and was not properly the basis for a post-trial attack on the conviction. State v. Matera, 266 So.2d 661 (Fla.1972).
However, even if there had been a timely presentation of this issue, based upon our review of the record, we con- *802 elude that the failure to preserve the khaki pants was not a denial of due process pursuant to Arizona v. Youngblood, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), and Kelley v. State, 569 So.2d 754 (Fla.1990). There is simply no showing that Detective Nestor acted in bad faith in deciding not to preserve pants which had no blood stains. Moreover, Merck has to stack multiple inferences in order to postulate that the pants were either material or exculpatory. Thus, we find no merit in Merck’s fourth issue.
Merck I, 664 So.2d at 942. The record reveals that during the defense’s cross-examination of Detective Nestor, defense counsel specifically asked Nestor whether Sullivan had identified the khaki pants as the pants worn by the perpetrator, to which Nestor responded affirmatively, but stated that because no blood was on them, he determined them to be of no evidentia-ry value. Merck’s instant claim provides no new information which has not already been addressed. Therefore, the first prong of a newly discovered evidence claim has not been met.
Additionally, regarding the second prong of a newly discovered evidence claim, Nestor’s 1997 testimony does not provide evidence that would probably produce an acquittal on retrial. See Jones II, 709 So.2d at 521. As determined by this Court on direct appeal, because no blood was found on the khaki pants, “Merck has to stack multiple inferences in order to postulate that the pants were either material or exculpatory.” Merck I, 664 So.2d at 942. Therefore, it is clear that the trial court properly summarily denied the motion because its allegations are conclusively refuted by the record. Accordingly, we affirm the postconviction court’s summary denial of this claim.
Habeas Corpus Petition
Merck raises the following issues in his habeas petition: (1) whether cumulative error deprived Merck of a fair trial; (2) whether death constitutes cruel and unusual punishment based on Merck’s incompetency; (3) whether Florida’s death penalty statute is unconstitutional as applied to Merck’s case; and (4) whether counsel was ineffective for failing to allege that Florida’s capital sentencing statute is unconstitutional on its face and as applied to Merck’s case.
1. Cumulative Error
Merck asserts that he was denied a fair trial based upon cumulative errors committed by trial counsel. “[W]here individual claims of error alleged are either procedurally barred or without merit, the claim of cumulative error must fail.” Griffin v. State, 866 So.2d 1, 22 (Fla.2003); see also Downs v. State, 740 So.2d 506, 509 n. 5 (Fla.1999). Merck is not entitled to relief on this claim because the alleged individual errors are without merit as provided in our discussion of his postconviction motion above, and, therefore, the contention of cumulative error is without merit.
2. Competency at Time of Execution
Merck asserts that in accordance with Florida Rules of Criminal Procedure 3.811 and 3.812, a prisoner cannot be executed if the person lacks the mental capacity to understand the fact of the impending death and the reason for it. Merck acknowledges that this claim is not ripe for review since a death warrant has not been issued and asserts that he raises this issue for preservation purposes only. This Court has repeatedly held that no relief is warranted under these circumstances. See, e.g., Gonzalez v. State, 990 So.2d 1017, 1035 (Fla.2008) (rejecting claim that defendant may not be competent at the time of execution where defendant acknowledges *803 that claim is not ripe for review and was being raised only for preservation purposes) (citing State v. Coney, 845 So.2d 120, 137 n. 19 (Fla.2003)); see also Jones v. State, 845 So.2d 55, 74 (Fla.2003); Hall v. Moore, 792 So.2d 447, 450 (Fla.2001). Merck is not entitled to relief on this claim.
3. Ring Claim
Merck claims that based on the United States Supreme Court decisions in Jones v. United States, 526 U.S. 227, 243, n. 6, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), and Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 2355, 147 L.Ed.2d 435 (2000), Merck’s death sentence is unconstitutional because it is impossible to determine whether a unanimous jury found any one aggravating circumstance. “[I]t is improper to argue in a habeas petition a variant to a claim previously decided.” Reaves v. Crosby, 837 So.2d 396, 398 (Fla.2003). Merck raised this claim on direct appeal and this Court denied the claim on the merits. See Merck III, 975 So.2d at 1067.
Merck claims that the decision in Evans v. McNeil, 08-14402-CIV-JEM, 2011 WL 9717450 (S.D.Fla.2011), in which the United States District Court for the Southern District of Florida determined that Florida’s death penalty procedures violate Ring, supports Taylor’s contention that his sentence of death should be vacated. However, the Eleventh Circuit Court of Appeals recently reversed the decision of the District Court. Evans v. Sec’y, Fla. Dep't of Corr., 699 F.3d 1249, 1265-66 (11th Cir.2012). Furthermore, even if it had been affirmed, a federal district or appeals court ruling that a Florida statute is unconstitutional is not binding on this Court. State v. Dwyer, 332 So.2d 333, 335 (Fla.1976). Accordingly, we deny relief on this claim.
4. Ineffective Assistance of Counsel for Failure to Raise Ring Claim
Merck asserts that counsel was ineffective for failing to argue that Florida’s death penalty statute is unconstitutional on its face and as applied to this case at trial and on appeal. To the extent that Merck claims trial counsel was ineffective, the claim is not cognizable on ha-beas corpus review. Nelson v. State, 43 So.3d 20, 33 (Fla.2010). To the extent that Merck claims appellate counsel was ineffective, a habeas claim based on ineffective appellate counsel must satisfy the Strickland standard. Lynch v. State, 2 So.3d 47, 84-85 (Fla.2008) (to grant habeas relief based on ineffectiveness of appellate counsel, the alleged omissions must be of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance and the deficiency compromised the appellate process to such a degree as to undermine confidence in the correctness of the result). Appellate counsel will not be deemed ineffective for failing to raise a meritless issue. See Lynch, 2 So.3d at 85. This Court has repeatedly upheld the constitutionality of the state’s capital punishment statute and process as currently administered especially where the prior violent felony aggravator is present. See, e.g., Hall v. State, 87 So.3d 667, 671 (Fla.2012) (citing Bryant v. State, 901 So.2d 810, 823 (Fla.2005)). Furthermore, we addressed Merck’s claim that Florida’s death penalty sentencing statute was unconstitutional on direct appeal and determined the claim meritless. Merck III, 975 So.2d at 1067. Accordingly, we deny relief on this claim.
CONCLUSION
Based on the foregoing, we affirm the trial court’s denial of Merck’s postconvic *804 tion motion and deny Merck’s habeas petition.
It is so ordered.
POLSTON, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, LABARGA, and PERRY, JJ., concur.

. Spencer v. State, 615 So.2d 688 (Fla.1993).

. The trial judge found two aggravating factors: HAC and prior violent felony; and two nonstatutory mitigating factors: abused childhood and alcohol use on the night of the murder. Merck I, 664 So.2d.at 941.

. The trial judge found three aggravating factors: felony' probation, prior violent felony, and HAC; two statutory mitigating factors, age and extreme mental or emotional disturbance; and six non-statutory mitigating factors: childhood abuse, learning disability, long-term alcohol abuse, chemically dependent parents, lack of parental role model, and capacity to form loving relationships. Merck II, 763 So.2d at 296.